**In re Barry G. SUTTON, Debtor.**

**Bankruptcy No. 87–00969–BKC–TCB.**

United States Bankruptcy Court,
S.D. Florida.

Sept. 2, 1987.

---

Daniel L. Bakst, West Palm Beach, Fla., for debtor.

Irving Gennet, Boca Raton, Fla., trustee.

Theodore A. Jewell, Palm Beach, Fla., for movant Innovative Business Controls, Inc.

## ORDER CONVERTING CASE TO CHAPTER 7

THOMAS C. BRITTON, Chief Judge.

At a hearing held August 25 for approval of debtor's disclosure statement, a creditor's motion for dismissal (C.P. No. 25a) was also before the court.[1] The debtor did not controvert or respond to the creditor's motion. The court approved the disclosure statement as to form, expressing concern as to the substance of the debtor's plan. The motion was taken under advisement.

I now conclude that the creditor is entitled to relief on its motion, but that conversion to chapter 7 is as effective and less drastic than dismissal. I shall presume, therefore, unless advised to the contrary on rehearing by either party, that both would prefer conversion to dismissal.

The essential allegations of the motion are already matters of record in this case. The debtor owns 75 shares of Innovative Business Controls, Inc., which is in the business of record storage and retrieval.

---

1. Notice was given July 10, pursuant to B.R. 2002(a)(5), that:
   "this court will consider dismissal of this case or its conversion to a Chapter 7 liquidation under Sec. 1112(b) upon the request of any interested party made at or before the hearing." (C.P. Nos. 17 and 20).

### The State Court Judgment

The only other shareholder (a former employee who owns 25 shares) obtained in November 1986 a State court judgment on behalf of the corporation against the debtor for $100,000 and her expenses. The judgment, which found gross mismanagement by the debtor, enjoined the debtor from disposing of any corporate assets and transferred the voting rights of the debtor's 75 shares to the minority shareholder to be used in trust for two years, until November 21, 1988. (C.P. No. 25a, Ex. A).

Execution issued on the judgment and the Sheriff scheduled a sale of the debtor's stock on March 26, 1987. The debtor blocked the sale by filing a chapter 13 bankruptcy petition several hours before it was to be held. His chapter 13 plan was opposed by the minority shareholder and the debtor chose to convert his case to chapter 11 on June 15, the day before the adjourned chapter 13 confirmation hearing. (C.P. Nos. 7 and 9.)

### The Chapter 11 Plan

He filed his chapter 11 plan and disclosure statement on July 1. His proposed "means for implementation of the plan"[2] are nebulous:

"The Debtor, BARRY G. SUTTON, intends to satisfy the claims of creditors, priority, secured and unsecured from the net proceeds of the sale of his 75 shares of stock in INNOVATIVE BUSINESS CONTROLS, INC. The debtor is presently negotiating with LEAHY ARCHIVES and with DATA ARCHIVES to sell the assets of I.B.C. (Copies of letters of intent are attached hereto as Exhibits '1' and '2'.)[3] The Debtor anticipates that the assets of INNOVATIVE BUSINESS CONTROLS, INC. can be sold for a minimum price of $300,000.00 and that said sale can be accomplished within 120 days from the date of confirmation of The Plan."

**2.** A plan must "provide adequate means for the plan's implementation". 11 U.S.C. § 1123(a)(5).

**3.** Only Ex. 1 from Data Archives was filed. It represents only that:

At another point in the same disclosure statement, the debtor states:

"The Debtor believes that his 75% interest in I.B.C. is valued in the minimum amount of two hundred and twenty-five thousand dollars ($225,000.00)." At p. 8.

In the sworn schedules filed three months earlier with his original chapter 13 petition, he valued this same stock at $50,000. (C.P. No. 2).

The confirmation hearing on the debtor's plan is scheduled for October 6. Debtor's chapter 11 plan, therefore, boils down to nothing more than an announced hope that he will sell his stock by February 6, 1988 for enough to satisfy the debt to the corporation, which was fixed by judgment against him 15 months before that date. He has produced no specific offer of purchase, no specific sale date, and no credible basis to value the stock. He asks this court to hold the corporate creditor at bay another five months from today to see if he can do what he hopes to do, but has failed to do the past ten months.

### Conclusion

I find that the chapter 11 petition has been filed in bad faith. There is no pretense even of an effective business reorganization, merely a liquidation of one asset. It is evident to me that the debtor seeks merely to delay or frustrate the legitimate effort of the movant minority shareholder on behalf of the corporate creditor to enforce its rights. These findings are "cause" under 11 U.S.C. §§ 1129(a)(3) and 1112(b) for either dismissal or conversion. *In re Natural Land Corp.*, 825 F.2d 296 (11th Cir.1987); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir.1984).

As recently stated in *Natural Land Corp.*, where the value of the debtor's property increased enough during the pendency of the litigation to satisfy the creditor's lien:

"This will confirm that we are interested in negotiating a purchase of IBC, at a price to be determined, subject to the following [7 conditions]."

"Congress did not design Chapter 11 to allow debtors to 'throw dice' with property subject to foreclosure, and we decline to consider as relevant the fortuitous outcome in this case. Plainly stated, Natural Land abused the bankruptcy process when it used the automatic stay provision to bide time, in the hope that the value of the foreclosed property would rise and produce a windfall profit." (At n. 1).

Dismissal, as prayed by movant, would relegate this matter to a Sheriff's sale and would jeopardize the rights of the debtor's other creditors to participate if the sale realizes more than the amount of movant's secured claim. It would also deny the debtor the right to seek discharge of the debts he cannot pay.

Conversion to chapter 7, on the other hand, would permit a trustee's sale under circumstances which should produce the full market value of the stock (benefiting both parties), would permit an orderly distribution of the proceeds, and would preserve the debtor's opportunity for discharge. Under the circumstances, conversion is more appropriate than dismissal.

Therefore, this case is converted to chapter 7 and Irving Gennet is reappointed trustee. Bond is waived.

Pursuant to Rule 1019(6), the debtor is required to file a final report and account within 30 days after the date of this order. The report will list all receipts and disbursements while the case was under chapter 11, and will include a separate schedule of unpaid debts incurred during the chapter 11 to the date of conversion to chapter 7.