**In re: Wallace L. EDWARDS
d/b/a American Gearbox
Company, Debtor.**

**Bankruptcy No. 92–60463–S–11–KMS.**

United States Bankruptcy Court,
W.D. Missouri, S.D.

April 17, 1992.

James R. Doran, Springfield, Mo., Samuel J. Short, Jr., Stockton, Mo., David E. Wilhite, Lebanon, Mo., for Superior Gearbox.

Joseph D. Sheppard, III, Springfield, Mo., for debtor.

## ORDER DISMISSING CASE AND SETTING SUPERSEDEAS BOND FOR STAY PENDING APPEAL

KAREN M. SEE, Bankruptcy Judge.

The issues are: whether this Chapter 11 case should be dismissed as a bad faith filing; and if the case is not dismissed, whether debtor can reject as an executory contract a stock purchase contract, which was held to contain a valid non-competition clause, in a state court judgment entered before the bankruptcy filing.

After reviewing the evidence, file and arguments of counsel, the court finds: the Chapter 11 case was not filed in good faith and should be dismissed; and since the case is being dismissed, the motion to reject an alleged executory contract need not be reached. Even if the contract with the non-competition provision were rejected, the case should still be dismissed because debtor's Chapter 11 operation would violate an injunction entered in state court against use of technology, trademarks and intellectual property belonging to movant Superior Gearbox Company, so debtor would be unable to propose a feasible Chapter 11 plan.

## I. FACTS

Wallace Edwards entered into a stock purchase agreement dated December 30, 1986, with Superior Gearbox Company, Richard Carr and Stewart Thomson. Among other things, the agreement provided that certain unique gear manufacture technology was owned by Superior, and further, that under certain conditions Edwards would be subject to a non-competition clause for 10 years, during which time he agreed not to make or distribute any gearboxes.

Edwards left Superior and started a company, SCG, Inc., which manufactured gearboxes using the technology owned by Superior. SCG also manufactured products which were designed to look like and be passed off as Superior's products.

Litigation ensued and on March 17, 1992, Judge David Darnold of the Circuit Court of Cedar County issued two judgments in favor of Superior and against Wallace Edwards and SCG, Inc., along with extensive findings of fact and conclusions of law, submitted under seal because they pertained to trade secrets.[1] The judgment was entered after a three week trial on the issue of liability, during which Judge Darnold heard extensive, complex testimony concerning the technology and related trademark, licensing and intellectual property issues. A trial on damages was set for a later date.

Reduced to the most elementary terms, the state court judgments found that 1) unique technology, trademarks, licenses and intellectual property were owned by Superior, and both SCG, Inc. and Wallace Edwards were enjoined from using the technology and from making or distributing products which were designed to look like or be passed off as Superior's products; and 2) Wallace Edwards individually was bound by the non-competition agreement and was enjoined from manufacturing or distributing any gearboxes, and from dealing with Superior's customers. The state judge further ordered that in order to stay proceedings and for defen-

---

1. The technology is not detailed in this order because it was found to be a trade secret.

dants to continue using the technology pending appeal, they would be required to post a $75,000 supersedeas bond.

SCG, Inc. and Mr. Edwards did not want to comply with the state court judgment or post a supersedeas bond pending appeal. Therefore, Mr. Edwards purported on March 20, 1992, to dissolve SCG, Inc., one of the defendants bound by the state court judgment; transferred all the corporate assets to his individual ownership; and three days later, on March 23, 1992, filed a Chapter 11 bankruptcy. After filing bankruptcy, he immediately filed a Motion to Reject Executory Contract, seeking to reject the stock purchase agreement which had been one of the subjects of the state judgment.

Creditor Superior Gearbox Company filed a Motion to Dismiss for Bad Faith Filing and to Impose Sanctions against debtor.[2] Superior requested an emergency hearing, alleging injury from debtor's continued use of Superior's technology in violation of the state court injunction.

A hearing on both the motion to dismiss and the motion to reject contract was set for April 9, 1992. Debtor Wallace Edwards appeared in person and by counsel. Movant Superior appeared through its corporate representative, Richard Carr, and by counsel. A lengthy prehearing conference was followed by an evidentiary hearing.

The court first took up the Motion to Dismiss for Bad Faith Filing. Superior presented testimony from Mr. Carr. Exhibits included the contract between debtor Wallace Edwards, Superior Gearbox Company and Richard Carr, dated December 30, 1986; a judgment against Wallace Edwards and SCG, Inc., in favor of Superior, entered by Judge Darnold on March 9, 1992; a second judgment in Superior's favor based on findings made March 17, 1992; the findings of fact and conclusions of law in connection with the first judgment; and documents showing that debtor transferred all assets from SCG, Inc. to his individual name three days before the bankruptcy filing. Debtor presented evidence, including testimony as to viability of debtor's business and potential customers.

## II. MOTION TO DISMISS FOR BAD FAITH FILING

■ The court finds the Chapter 11 case was not filed in good faith and the Motion to Dismiss should be granted for the following reasons. First, it appears the Chapter 11 proceedings were filed for the primary purpose of avoiding injunctions entered in state court on complex intellectual property law issues involving trademarks and misappropriation of technology. Second, the state court determinations should be given collateral estoppel effect in the bankruptcy court. Third, debtor employed a new operating structure and transferred assets to himself immediately before the bankruptcy filing. Fourth, debtor cannot propose a feasible plan.

■ In determining whether bad faith exists in a bankruptcy filing, the court must consider the totality of circumstances. *In re Reiser Ford, Inc.*, 128 B.R. 234 (Bankr.E.D.Mo.1991). Each of the above reasons separately, and certainly taken together, support the conclusion that this case was not filed in good faith and should be dismissed.

### A. Circumvention of State Court Judgment and Injunction

It is significant that debtor is not seeking to discharge a money judgement, as is permitted by the Bankruptcy Code. Rather, the bankruptcy was filed for the purpose of circumventing an injunction against actions which the state court has determined are wrongful and constitute misappropriation of Superior's property. Such a purpose indicates bad faith in filing the Chapter 11

---

**2.** Superior's motion to dismiss included a request for sanctions for bad faith in filing. The court did not rule on sanctions at the hearing. In a teleconference on April 15, 1992, the court advised that it would rule on sanctions in the order on dismissal so all issues could be addressed in one appeal, and that if Superior intended to proceed with the request for sanctions, counsel should immediately submit its statement of attorney fees incurred in the bankruptcy case. Superior advised that it would withdraw the request for sanctions in order to expedite these proceedings, so that issue is no longer pending.

case. The bankruptcy court is being asked to authorize acts which the state court has determined, after a three week trial on the issue of liability, are wrongful.

The bankruptcy court reviewed Judge Darnold's extensive findings of fact and conclusions of law. The state court trial involved many complex matters, and legal issues pertaining to intellectual property matters were carefully considered.

The agreement provided for Mr. Carr to purchase certain stock from debtor. The agreement contained noncompetition restrictions in which Mr. Edwards individually agreed not to manufacture or distribute gearboxes for 10 years. The agreement also acknowledged that certain technology was the property of Superior. The subject technology relates to the machining method of product manufacture.

Judge Darnold found that the individual, Mr. Edwards, and the corporation, SCG, Inc., wrongfully utilized Superior's technology, trademarks, and intellectual property. The stock purchase agreement and its noncompetition clause did not bind the corporation. The contract extended only to debtor, Mr. Edwards, personally. The non-competition clause provided that debtor would not market any gearboxes at all for 10 years.

The issue of whether the state judge was correct in enforcing the non-competition agreement against Mr. Edwards is separate and apart from the injunction against Mr. Edwards and SCG, Inc. using technology and trademarks which the court independently found were owned by Superior. Even if the non-competition agreement is avoided, either by the Missouri Court of Appeals, or by rejection as an executory contract in bankruptcy court, the remaining provisions of the state court injunction, prohibiting use of Superior's unique technology and trademarks, are still effective.

### B. Collateral Estoppel

Based on the complexity of the state court proceedings and the three week trial on liability issues, it would be inappropriate for the bankruptcy court to arbitrarily substitute its judgment for that of the state judge. It would also be inappropriate to permit debtor to freely use technology which has already been found by the state judge to be the exclusive property of Superior. In *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the Supreme Court held that bankruptcy courts should give collateral estoppel effect to state court determinations in appropriate circumstances. Debtor alleges that *Grogan* is not applicable because it involved a dischargeability proceeding. That distinction is meaningless.

Appropriate circumstances exist here for collateral estoppel. Issues of ownership and use of technology, which would be relevant in the bankruptcy case, have already been litigated on the merits in a trial between the same parties. Debtor "may not counter allegations of bad faith solely with an attempt to relitigate the issues presented in its state court case." *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1075 (5th Cir.1986). Debtor should not be permitted to undermine the state court injunction by resort to a Chapter 11 case where the only plan that could now be proposed would mandate either violation of the injunction, or relitigation in bankruptcy court of the intellectual property issues. This court previously entered an order modifying the stay so disputes on the scope of the injunction can be taken up in state court. Debtor's remedy should be to pursue its appeal in the Missouri Court of Appeals. In violation of principles of judicial economy, debtor is now shopping for relief in four different courts, in the Cedar County Circuit Court, Missouri Court of Appeals, Bankruptcy Court and U.S. District Court.

### C. Transfer of Assets on Eve of Bankruptcy

■ The "new debtor syndrome," in which an entity "has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases." *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1073 (5th Cir.1986). It appears that this debtor engaged in a form of the "new

debtor syndrome" which is indicative of a bad faith filing. The corporation, SCG, Inc., was dissolved and all assets were transferred to the individual, Mr. Edwards, a few days after entry of the state court judgment against SCG and Mr. Edwards, and three days before Mr. Edwards filed bankruptcy. The court does not agree with debtor's assertion at the hearing that these actions were taken merely to "streamline" the bankruptcy.

The court concludes that debtor had a strategic purpose in dissolving the corporation and transferring all corporate assets to himself three days before bankruptcy. Only the individual, Mr. Edwards, was a party to the stock purchase agreement, which provided that 1) Superior owned the technology; and 2) debtor would refrain from selling any gearboxes for 10 years. Only Mr. Edwards could seek rejection of the contract in bankruptcy, and then argue that upon rejection of the contract, the state court judgment was ineffective. So long as SCG continued in existence, Edwards could not argue that rejection of the underlying contract vitiated the state court judgment, because SCG could not seek rejection of the contract in bankruptcy. Even if SCG filed bankruptcy, it would still be bound by the injunction against using Superior's technology or manufacturing look-alike products. Thus, in order for there to be any hope of totally circumventing the judgment, it was necessary to manipulate ownership of assets in order to place them with a party who could try to reject the agreement and then argue the nullification of the judgment.

If SCG, Inc. was out of the picture, Mr. Edwards could argue that rejection of the agreement in bankruptcy should effectively nullify the judgment. A "new" debtor entity was created on the eve of bankruptcy, for the purpose of avoiding the injunction entered by the state court, which constitutes bad faith. In fact, it appears on the record that the transfer of assets to debtor was completed after filing the bankruptcy; such assets transferred to debtor post-petition would not be property of the estate on the date of bankruptcy which would be covered by the automatic stay.

Debtor alleged that these proceedings were filed because of inability to provide a supersedeas bond in the state court case. Even if that was the purpose of filing, that fact in combination with the creation of a new debtor on the eve of bankruptcy, and the inability to propose a feasible plan, still indicates lack of good faith in filing. In effect, debtor is requesting this court to avoid the state court injunction, without the requirement to provide a supersedeas bond to protect the prevailing party, and to allow debtor to operate without restraint in Chapter 11 in a manner which the state judge has found to be wrongful.

On the issue of good faith, it is noted that in debtor's brief in opposition to the motion to dismiss, and in the prehearing conference, debtor represented that compliance with Judge Darnold's injunction would create hardships that extended beyond this debtor because compliance would result in termination of employees. However, on the record the evidence was that there were only four employees, and only one who had been employed more than two weeks and who was not a member of debtor's immediate family, but that debtor intended to hire additional employees.

## D. Inability to Propose a Feasible Plan

A Chapter 11 debtor must be able to propose a feasible plan. Here, debtor cannot propose any plan other than to stall the state court injunction for several years, without having to post the supersedeas bond, and to operate in violation of the injunction.

Debtor sought permission to use $50,000 of estate funds to purchase a new piece of equipment for future operations. Debtor asserted he could manufacture gearboxes without violating the state court injunction if he had this piece of equipment and if the non-competition agreement is rejected. Superior strongly disputed this and contended that a different machine would still entail use of Superior's technology. The state judge, who has the benefit of a three week trial and considerable knowledge of the complex facts, is the appropriate judge to

make that determination. The state court judgment provided for the state judge to review such disputes over the scope of the injunction, and the automatic stay in bankruptcy has been modified to allow the state judge to do so.

Debtor's past and current operations are based on use of the technology and trademarks which Judge Darnold held belonged to Superior. As noted above, assuming that debtor file a proposed plan of reorganization providing for continued operations, it would almost certainly violate the state court injunction. 11 U.S.C. 1129, which enumerates the requirements for plan confirmation, requires a finding that the plan be proposed in good faith and not by any means forbidden by law. Those findings cannot be made for a plan which is based on violation of a valid injunction.

There was no evidence of any realistic potential for reorganization. Debtor is prohibited, by the agreement and by Judge Darnold's judgments, from using Superior's technology and from dealing with Superior's customers. Debtor's only purchase orders are from Vermeer Company, a Superior customer with which debtor is prohibited from dealing; in addition, the level of orders from Vermeer is not sufficient to support a Chapter 11 plan.

Although debtor hoped to obtain additional business, there was only speculation concerning that possibility. Moreover, all of debtor's production is based on technology and trademarks which he is prohibited from using, based on the finding that it belongs to Superior, which is an issue separate and apart from the non-competition agreement. Therefore, even if the non-competition agreement is rejected so debtor could sell to Superior's customers, debtor still could not fill the orders because the products are manufactured by prohibited technology.

Debtor initially indicated that he planned to use the prohibited technology while operating under the protection of the Bankruptcy Code.[3] It is an indication of lack of good faith that since entry of the state court judgments, and after the filing of bankruptcy, debtor has violated the injunction by shipping prohibited products, even during a time in which he was trying to obtain relief from this court.

Debtor also testified it might be possible to sell the business. However, there was no evidence as to the potential for sale or the possible terms or benefit to the estate of any sale. Such possibilities are not sufficient to demonstrate a reasonable possibility of proposing a feasible plan.

On a motion to dismiss, debtor is not required to meet confirmation standards in describing potential plans, but he must be able to demonstrate some ability to file a feasible plan. Even if debtor were allowed to remain in Chapter 11, it does not appear that he could successfully reorganize the business. Debtor would have to instantaneously develop and institute technology which was not prohibited by the state court judgment. Even with rejection of the non-competition provision, there is no indication that it would be possible for debtor to continue in operation because other parts of the state court judgment would prohibit meaningful operations.

There would be only two alternatives for the Chapter 11 case: 1) for debtor to propose a plan for continued operations using Superior's technology, in violation of the state court injunction; or 2) for debtor to operate as a debtor in possession indefinitely, without proposing a plan, in violation of the state court injunction, and without being required to post a supersedeas bond, while the appeals proceed for an estimated two years, both in state court on the injunction appeal, and to the District Court and Eighth Circuit on this dismissal issue.

### III. REJECTION OF NON–COMPETITION AGREEMENT

It is not necessary to determine whether debtor can reject the stock purchase agree-

---

**3.** Later, debtor modified his position and asserted that with new equipment, he would comply with the injunction.

ment as an executory contract, because as a threshold matter the court has ruled the case should be dismissed.

However, even if the case is not dismissed, it is beside the point whether the contract can be rejected or whether Judge Darnold correctly found that the non-competition clause is enforceable. Even if the entire stock purchase agreement and its non-competition and ownership provisions are rejected, so that debtor is no longer prohibited from manufacturing gearboxes for 10 years, Judge Darnold found, separate and apart from the agreement, that certain technology, trademarks and intellectual property belonged to Superior, that debtor has wrongfully used it, and that debtor is enjoined from using it. That portion of the injunction, which is not based on the contract, must be honored in bankruptcy court.

### IV. STAY PENDING APPEAL

■ On April 15, 1992, debtor requested a teleconference, during which he made an oral motion for stay pending appeal. After careful consideration, this court has determined that it would be appropriate to stay this order pending appeal if debtor files a supersedeas bond in the amount of $75,000, which is the same amount as the bond ordered in the state court action. It would not be equitable to permit debtor to continue to operate in this Chapter 11 proceeding without a bond, in violation of the state court injunction, using Superior's technology and intellectual property, for an estimated two years, while the state court injunction proceeded through Missouri appellate courts and this order proceeded to the Eighth Circuit. Such a ruling would allow debtor to use the bankruptcy court as a vehicle for violating the substance and spirit of Judge Darnold's injunction concerning ownership and misappropriation of Superior's property.

For the foregoing reasons, it is hereby

ORDERED, ADJUDGED AND DECREED that the above-styled Chapter 11 case is hereby dismissed; and this order will be stayed pending appeal upon filing of a supersedeas bond in the amount of $75,-

000.00, as ordered by Judge David Darnold, Circuit Court of Cedar County, Missouri.