In re FORUM HEALTH, et al., Debtors.

In re Trumbull Memorial Hospital Foundation, an Ohio non-profit corporation, Debtor.

In re Western Reserve Health Foundation, an Ohio non-profit corporation, Debtor.

Nos. 09–40795, 09–40809, 09–40800.

United States Bankruptcy Court, N.D. Ohio.

April 22, 2011.

Jeremy M. Campana, Thompson Hine
LLP, Matthew A. Salerno, Melissa Giber-

son, Paul W. Linehan, Sean D. Malloy, Shawn M. Riley, McDonald Hopkins LLC, Cleveland, OH, Michael A. Gallo, Timothy M. Reardon, Nadler Nadler & Burdman Co., Youngstown, OH, for Debtors.

## MEMORANDUM OPINION REGARDING MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR STAY PENDING APPEAL

KAY WOODS, Bankruptcy Judge.

This cause is before the Court on Motion of the Official Committee of Unsecured Creditors for Stay Pending Appeal ("Motion for Stay") (Doc. # 1505) filed by the Official Committee of Unsecured Creditors ("Committee") on March 24, 2011. Pursuant to the Committee's request for an expedited hearing and shortened notice time (Doc. # 1507), the Court set a hearing on the Motion for Stay for April 12, 2011, at 9:30 a.m. ("Hearing") (Doc. # 1514). Responses, if any, to the Motion for Stay were due by noon on April 9, 2011. On April 8, 2011, (i) Mike DeWine, Attorney General of Ohio ("Ohio AG"), filed Position of the Attorney General of Ohio Relative to the Motion of the Official Committee of Unsecured Creditors for Stay Pending Appeal ("AG Position") (Doc. # 1529), and (ii) Trumbull Memorial Hospital Foundation ("TMHF") and Western Reserve Health Foundation ("WRHF" and together with TMHF, the "Foundations") filed Foundations' Objection to Motion for Stay Pending Appeal ("Foundations' Objection") (Doc. # 1530).

The Motion for Stay seeks an order from this Court staying the effectiveness of the Court's Order Granting (i) Motion of Debtor Trumbull Memorial Hospital Foundation to Dismiss its Chapter 11 Case; and (ii) Motion of Debtor Western Reserve Health Foundation to Dismiss its Chapter 11 Case ("Dismissal Order") (Doc. # 1483) entered on March 17, 2011.

The Court held the Hearing, as scheduled, at which appeared: (i) Craig E. Freeman, Esq. on behalf of the Committee; (ii) Sean D. Malloy, Esq. on behalf of the Foundations; and (iii) Patricia D. Lazich, Esq. on behalf of the Ohio AG. After hearing arguments of counsel, the Court took this matter under advisement. For the reasons set forth herein, the Court will deny the Motion for Stay.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the general order of reference (General Order No. 84) entered in this district pursuant to 28 U.S.C. § 157(a). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052.

### I. FACTS

On March 17, 2011, the Court entered a lengthy Memorandum Opinion Regarding (i) Motion of Debtor Trumbull Memorial Hospital Foundation to Dismiss its Chapter 11 Case; and (ii) Motion of Debtor Western Reserve Health Foundation to Dismiss its Chapter 11 Case ("Dismissal Opinion") (Doc. # 1482).[1] The Court incorporates by reference the facts and the Court's analysis as set forth in the Dismissal Opinion as if fully restated herein. There are no new relevant facts to add in ruling on the Motion for Stay.

### II. FACTORS REQUIRED FOR IMPOSITION OF STAY PENDING APPEAL

The Committee's Motion for Stay is based on Fed. R. Bankr.P. 8005, which provides as follows:

---

1. All capitalized terms not defined herein are defined in the Dismissal Opinion.

A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge. The district court or the bankruptcy appellate panel may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court. When an appeal is taken by a trustee, a bond or other appropriate security may be required, but when an appeal is taken by the United States or an officer or agency thereof or by direction of any department of the Government of the United States a bond or other security shall not be required.

FED. R. BANKR.P. 8005 (West 2010).

■ Citing *City of Akron v. Akron Thermal, Ltd. P'ship (In re Akron Thermal, Ltd. P'ship)*, 414 B.R. 193 (N.D.Ohio 2009), the Committee states that the Court must consider the following four factors in determining whether to grant a stay pending appeal:

1. the likelihood that the party seeking the stay will prevail on the merits of the appeal;

2. the likelihood that the moving party will be irreparably harmed absent a stay;

3. the prospect that others will be harmed if the court grants the stay; and

4. the public interest in granting the stay.

*Id.* at 200–01 (citing *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir.1991)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Griepentrog*, 945 F.2d at 153 (citing *Creditor's Comm. v. DeLorean (In re DeLorean Motor Co.)*, 755 F.2d 1223, 1229 (6th Cir. 1985)).

The Committee then asserts that it has presented satisfactory evidence regarding all four factors.

### A. Likelihood of Prevailing on the Merits of the Appeal.

■ First, the Committee argues that the Dismissal Order was incorrectly decided and, thus, it is likely the Committee will prevail on the merits of its appeal. (Mot. for Stay ¶ 15.) The Foundations counter that the Committee's burden is high because "the Committee must convince an appeals court that this Court committed a clear error of judgment and abused its discretion in entering the Dismissal Order." (Found. Obj. ¶ 13.)

The Committee sets forth three reasons why it is likely to succeed on appeal: (i) the Foundations failed to satisfy their evidentiary burden that there were only de minimis claims against the Foundations; (ii) the requirements of 11 U.S.C. § 1112(b)(2) were satisfied and warranted

denial of the Motions to Dismiss; and (iii) there existed unusual circumstances demonstrating that granting the Motions to Dismiss was not in the best interests of creditors, including the non-Foundation Debtors as creditors of the Foundations. The Court examines each of these arguments, below.

### 1. De Minimis Claims.

The Committee argues that the Foundations failed to satisfy their evidentiary burden regarding cause for dismissal because they put forth no evidence that there were only de minimis claims against the Foundations. (Mot. for Stay ¶¶ 16–22.) The Committee states that the Court accepted this assertion as cause for dismissal of the Foundations' cases, but "the Foundations introduced no evidence whatsoever regarding the magnitude of the claims against the Foundations." (*Id.* ¶ 18.) The Committee simply misreads and misstates the Court's analysis in the Dismissal Opinion and the basis for the Dismissal Order. Nowhere in the Dismissal Opinion or the Dismissal Order does the Court mention "de minimis" claims against the Foundations as the basis for dismissing the Foundations' cases. The Court did not make any finding that the claims against the Foundations were de minimis in amount; rather, the Court held that the Foundations had established cause for dismissal because TMHF and WRHF were now in a position to pay their creditors without the protection of the Bankruptcy Court.

The Foundations based their Motions to Dismiss on change of circumstances—*i.e.,* the Foundations filed for bankruptcy protection because they had liability on the Bond Obligations, but once the Bond Obligations were satisfied, the Foundations no longer needed the protection of the Bankruptcy Court because they had sufficient funds to pay their creditors. The Court

found that the Foundations had established cause for the Court to dismiss their cases. "To the extent a debtor has the resources to pay all of its creditors in full outside the protection of the Bankruptcy Code, continuation of a bankruptcy case does not serve a bankruptcy purpose . . . . Where, as here, a debtor no longer requires the protection of the Bankruptcy Code and the Bankruptcy Court, such debtor has established cause for dismissing the bankruptcy case." (Dismissal Op. at 14.)

The record amply supports the Court's holding that the Foundations have sufficient funds to pay their creditors without bankruptcy oversight. WRHF stated: (i) it held approximately $4,308,841.00 in unrestricted funds (WRHF Mot. to Dismiss ¶ 11), and (ii) subsequent to satisfaction of the Bond Obligations, it could "pay its few remaining creditors upon dismissal without the need for continued oversight by the Court" (*id.* ¶ 17). TMHF stated that it held approximately $8,098,598.00 in unrestricted funds (TMHF Mot. to Dismiss ¶ 11) and that it also had "no material obligations" (*id.* ¶ 17).

In support of its position that the claims against the Foundations were more than de minimis, the Committee notes that none of the Stipulated Facts address the magnitude of the claims against the Foundations. However, the absence in the Stipulated Facts of the amount of the claims against the Foundations is not dispositive. The Foundations' schedules and the claims register, which are part of the record before the Court, establish that actual, valid claims against the Foundations fall well within the Foundations' assets. Although the following specific amounts were not included in the Motions to Dismiss, the total filed and scheduled claims are, indeed, well below the amount of unrestricted funds held by each of the Foundations.

Total filed and scheduled claims against TMHF have a face value in the amount of $4,380,137.47, including an IRS claim for $4,293,479.51 that has been withdrawn, leaving claims in the amount of $86,657.96. (Found. Obj. ¶ 16.) Total filed and scheduled claims against WRHF have a face value in the amount of $795,377.49. (*Id.*) The Stipulated Facts establish that (i) TMHF holds approximately $8,098,598.00 in unrestricted funds (Stip. Facts ¶ 45), and (ii) WRHF holds approximately $4,308,841.00 in unrestricted funds (*id.* ¶ 31). As a result, the record establishes that filed and scheduled claims against the Foundations are greatly exceeded by the unrestricted funds held by the Foundations. Notwithstanding the way the Committee framed this issue, the Foundations' ability to pay their creditors without the need for bankruptcy oversight, rather than categorizing the claim amounts as de minimis, is the cause for dismissal established by the Foundations.

The Committee offered no credible counter-argument to the Foundations' representations that they no longer needed bankruptcy protection to pay their creditors. Instead, the Committee argued that the PBGC claims and claims for contribution by the non-Foundation Debtors dwarf the amount of unrestricted funds held by the Foundations and, thus, require continuation of the Foundations' bankruptcy cases. As set forth below, neither of these arguments has merit.

### i. PBGC Claims.

The Committee argues that the only evidence available to the Court establishes that, in fact, there are substantial claims against the Foundations. (Mot. for Stay ¶ 18.) The Committee contends that the PBGC filed a number of claims against each Debtor, including against each of the Foundations, which included a claim in the estimated amount of $207.3 million. (Mot. for Stay ¶ 19, citing Stip. Facts ¶¶ 15–16.) The Committee also contends that the Debtors' proposed settlement with the PBGC ("PBGC Settlement"), which would waive all claims against the Foundations, is ambiguous as to whether the PBGC is actually releasing its claims against the Foundations. (*Id.*) The Committee accurately notes that it has objected to the Settlement Motion[2] and that the PBGC Settlement[3] requires Court approval. (*Id.*)

The Foundations contend that waiver of the PBGC's claims against the Foundations in the PBGC Settlement is not ambiguous. (Found. Obj. ¶ 17.) Even if the PBGC Settlement is unclear, the Foundations contend that any ambiguity can be clarified in an order approving the Settlement Motion. (*Id.*) The Foundations suggest that, even if the Settlement Motion is not approved, the PBGC will have direct claims against the Foundations that exceed the value of the Foundations' assets. (*Id.*) Thus, the Committee would receive no benefit if the Settlement Motion is not approved. (*Id.*) Finally, the Foundations note that the PBGC did not object to the Motions to Dismiss.

Despite the Committee's arguments, neither perceived ambiguity in the PBGC

2. The motion to approve the PBGC Settlement ("Settlement Motion") (Doc. # 1344) has not yet come before this Court. The Debtors originally scheduled the hearing on the Settlement Motion for March 15, 2011 (Doc. # 1345). The hearing on the Settlement Motion was rescheduled by the Court for April 26, 2011. At the joint request of the Debtors and the Committee, the Court extended the objection deadline through and including April 12, 2011 (Doc. # 1519). The Committee has filed the only objection to the Settlement Motion (Doc. # 1384).

3. The PBGC Settlement is attached to the Settlement Motion as Exhibit A.

Settlement nor disapproval of the Settlement Motion (as apparently anticipated by the Committee) warrants denial of the Motions to Dismiss. Moreover, the Committee's professed concern about the PBGC's claims against the Foundations rings hollow. It appears from the PBGC Settlement that the PBGC has agreed to waive and release its claims against TMHF and WRHF. The Committee acknowledged (as it must) that the PBGC is free to waive any and/or all claims it has asserted against any and/or all of the Debtors. In addition, the PBGC—not the Committee— is in the best position to know if the PBGC has a claim against either TMHF or WRHF that it wants to pursue. *Significantly*, the PBGC did not object to the Motions to Dismiss. The Court must assume that the PBGC is acting in its own best interest. If the PBGC believed (i) it had claims against the Foundations that were not waived and released, and (ii) that dismissal of the Foundations' cases was not in the PBGC's best interest, the PBGC could have opposed the Motions to Dismiss. Alternatively, if the PBGC has not, in fact, waived and released all claims against TMHF and/or WRHF, because the Foundations will not get a discharge, the PBGC is not prejudiced by dismissal of the Foundations' cases and can still assert and seek to recover such claims against the Foundations.

### ii. Contribution Claims for Bond Obligations.

The Committee also argues that the non-Foundation Obligated Debtors have sizeable claims for contribution against the Foundations. Because "the principle of contribution is founded not upon contract but upon principles of equity and natural justice, which require that those who are under a common obligation or burden shall bear it in equal portions," the Committee concludes that the non-Foundation Obligated Debtors have a *prima facie* claim for contribution in excess of $16.91 million against each of the Foundations. (Mot. for Stay ¶ 20, citing *Huggins v. Graves*, 337 F.2d 486, 489 (6th Cir.1964).) The Committee also contends that the Administrative Claims Bar Date Order does not apply to any claim for contribution by one Obligated Debtor against another because it applies only to claims that arose on or before October 1, 2010, whereas the Stipulation and Agreed Order Regarding Payment of Series 2002A Bonds ("Bond Order") (Doc. # 1275) was not entered until November 30, 2010. (*Id.* ¶ 21.)

The Foundations counter that the Committee has not accurately stated the law regarding contribution because, applying Ohio law, any contribution by the Foundations as co-obligors on the Bond Obligations should be proportional to the benefit the Foundations received from the Bond Obligations. (Found. Obj. ¶ 19, citing *Rell v. Combes*, 25 Ohio App. 476, 479, 159 N.E. 133 (Ohio Ct.App.1927).) The Foundations state, "The Committee has offered no evidence that either Foundation ever received a penny of bond proceeds, and in fact they did not." (*Id.*) The Foundations assert that they were not required to show that they did not receive any proceeds from the Bond Obligations, but instead only were required to demonstrate cause to dismiss their cases. (*Id.* ¶ 20.) The Foundations also note that the Committee never took any discovery regarding the use of the proceeds from the Bond Obligations. (*Id.*) Finally, the Foundations argue that any claims for contribution against the Foundations arising on or before October 1, 2010, are barred by the Administrative Claims Bar Date Order. (*Id.* ¶ 23.)

The entire discussion about contribution claims appears to be a misguided attempt to sidetrack the Court from the real issue

at hand. Although the Committee argues that the "non-Foundation 'Obligated Debtors' have sizeable claims for contribution against the Foundations" (Mot. for Stay ¶ 20), *no such claims have ever been filed.* Significantly, it is extremely unlikely that the non-Foundation Obligated Debtors ever contemplated filing contribution claims against the Foundations because there was (i) no allocation of purchase price in the Sale Order; (ii) no discussion of contribution claims at any time prior to the hearing on the Motions to Dismiss; and (iii) no objection by any of the non-Foundation Obligated Debtors to the Motions to Dismiss. Because the Committee waited until the March 15, 2011 hearing on the Motions to Dismiss to raise this argument for the first time (the Committee failed to raise this argument in the Committee Objection), the non-Foundation Obligated Debtors were never provided with an opportunity to explain their positions concerning any potential contribution claims. In addition, because the Committee did not raise the argument until the hearing, the Foundations were not given an opportunity to prepare any evidence about either the law regarding contribution or the facts relating thereto.

The Court found that any contribution claims by the non-Foundation Obligated Debtors would be barred. (Dismissal Op. at 20–21.) Neither the pre-petition claims bar date nor the administrative expense claims bar date contained an exception for inter-company claims (which are barred without such an exception). As a consequence, all entities—including each of the Debtors—are forever barred from asserting against each of the Debtors (i) any and all pre-petition claims, and (ii) administrative expense claims that arose prior to October 1, 2010. The Committee argues that the contribution claims for the Series 2002A Bonds did not arise until the Court entered the Bond Order on November 30, 2010. However, since the Obligated Debtors each had joint and several liability on the Bond Obligations, any claim for contribution is most likely a pre-petition claim rather than an administrative expense claim. All pre-petition claims are forever barred.

However, whether or not any claims for contribution are barred by the Administrative Claims Bar Date Order is not dispositive of the Committee's argument. The Committee does not have standing to assert any claims for contribution—only a debtor-in-possession or a trustee may do so because any contribution claim belongs to the bankruptcy estate. Moreover, the Committee's own conduct demonstrates that its argument concerning the contribution claims allegedly held by the non-Foundation Obligated Debtors (which argument appears to have been made as an after-thought) lacks merit. The Committee argues that the non-Foundation Obligated Debtors are breaching their fiduciary duties by not asserting contribution claims against the Foundations. In contradiction of this argument, however, the Committee has failed to request any of the Debtors to assert a claim for contribution. Even more indicative of the Committee's lack of confidence in the merits of this argument is its abandonment of the need for a chapter 11 trustee. On March 31, 2011—two weeks after entry of the Dismissal Order—the Committee filed Notice of Withdrawal of Motion for the Appointment of a Chapter 11 Trustee (Doc. # 1521). The Committee's withdrawal of the Motion for the Appointment of a Chapter 11 Trustee (Doc. # 1376) is inconsistent with its arguments that (i) the non-Foundation Obligated Debtors have claims for contribution against the Foundations, and (ii) failure to file such contributions claims is a breach of the non-Foundation Obligated Debtors' fiduciary duties. (Mot.

for Stay at 9 n. 8.)[4] If the Committee seriously believed that the non-Foundation Obligated Debtors are breaching their fiduciary duties in not pursuing claims for contribution, the Committee would not have withdrawn the motion for appointment of a chapter 11 trustee, which could objectively evaluate whether contribution claims exist and/or are barred. By withdrawing the Motion for the Appointment of a Chapter 11 Trustee, the Committee acknowledges (at least implicitly) that the non-Foundation Obligated Debtors do not have contribution claims.

Furthermore, like the PBGC claims, assuming, *arguendo,* that the non-Foundation Obligated Debtors actually have non-barred contribution claims against the Foundations, they are free to pursue such claims subsequent to dismissal of the Foundations' bankruptcy cases.

### iii. Contribution Claims for Restructuring Costs.

The Committee contends that the Foundations have not paid their share of non-operating restructuring costs and that those Debtors who actually paid such costs have contribution claims against the Foundations. (Mot. for Stay ¶ 22.) At the hearing on the Motions to Dismiss, the Committee argued that restructuring costs should be divided pro rata (one-eighteenth to each Debtor), but conceded that this was only one of several ways to allocate restructuring costs.

The Foundations contend that the appropriate measure of non-operating restructuring costs owed by the Foundations is the cost of work actually performed for the Foundations themselves. (Found. Obj. ¶ 21.) The Foundations have stated that they will pay the restructuring costs associated with their cases and note that such costs are largely related to the current litigation. (*Id.*) These costs can be as easily paid outside of bankruptcy as within.

Like the argument for alleged contribution claims for the Bond Obligations, the Committee did not raise the issue of contribution claims for restructuring costs in the Committee Objection, but instead raised it for the first time at the March 15, 2011 hearing on the Motions to Dismiss. As a result, the Debtors were not given an opportunity to show how the restructuring costs have been shared among the Debtors or which of the Debtors benefitted from such costs. Other than the Committee's generalized *argument* that each of the eighteen Debtors should bear a one-eighteenth share of the restructuring costs, no evidence of this issue has been presented to the Court. Since there is no indication that the Foundations will not pay their share of the restructuring costs after dismissal, this argument also lacks merit.

### 2. Elements of 11 U.S.C. § 1112(b)(2).

Section 1112(b) of the Bankruptcy Code states, in pertinent part:

(b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, *absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall* convert a case under this chapter to a case under chapter 7 or *dismiss a case under this chapter,* whichever is in the best interests of

---

**4.** The alleged breach of fiduciary duty arguably goes only to the Committee's argument of "unusual circumstances" supporting denial of the Motions to Dismiss. However, by abandoning appointment of a chapter 11 trustee, the Committee demonstrates its perception of the weakness of the viability of the alleged contribution claims.

creditors and the estate, *if the movant establishes cause.*

(2) The *relief provided in paragraph (1) shall not be granted* absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, *if the debtor or another party in interest objects and establishes that—*

(A) there is a *reasonable likelihood that a plan will be confirmed* within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, *within a reasonable period of time;* **and**

(B) the *grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)—*

(i) for which there *exists a reasonable justification for the act or omission;* **and**

(ii) that *will be cured within a reasonable period of time* fixed by the court.

\* \* \*

11 U.S.C. § 1112 (West 2010) (emphasis added). The Committee argues that the Motions to Dismiss were incorrectly granted because the elements of § 1112(b)(2) were satisfied and, thus, the Motions to Dismiss should have been denied. (Mot. for Stay ¶¶ 24–28.) Having reviewed the Committee's arguments, this Court finds that the Committee is, simply, wrong.

The Committee states that the Dismissal Opinion "does not dispute" that the first element of § 1112(b)(2)—" 'there is a reasonable likelihood that a plan will be confirmed within a reasonable time' " (*id.* ¶ 24,

quoting *In re Orbit Petroleum, Inc.,* 395 B.R. 145, 148 (Bankr.D.N.M.2008))—is satisfied. (*Id.* ¶ 25.)[5] The Committee is incorrect in this regard. Indeed, to the contrary, the Court found that because the Committee's proposed plan ("Committee's Plan") (Doc. # 1339) was premised on substantive consolidation of the Foundations with the other Debtors, there was not a likelihood that the Committee's plan would be confirmed within a reasonable period of time.

The Committee also contends that because it has proposed a plan that can be confirmed within a short period of time, 11 U.S.C. § 1112(b)(2) requires this Court to deny the Motions to Dismiss. Although the Committee expressly states, "Substantive consolidation is not relevant to the Dismissal Motions, and it is not properly before the Court[,]" the premise of the Committee's arguments [sic] is that the assets of TMHF and WRHF can and must be distributed to creditors of the other Debtors. (Comm. Obj. ¶ 53.) As set forth below, the Committee's Objection must fail.

(Dismissal Op. at 10.)

Although the Committee correctly notes that the Committee's Plan was filed on February 2, 2011, and that a hearing on the Committee's proposed disclosure statement was originally scheduled for March 15, 2011, the Committee conveniently ignores the fact that it agreed that the Motions to Dismiss had to be determined before either of the disclosure statements proposed by the Committee and the non-Foundation Debtors could be addressed. The Committee tried (unsuccessfully) at

---

**5.** The Committee divides § 1112(b)(2) into a three-element test, as set forth in *In re Orbit Petroleum, Inc.,* 395 B.R. 145 (Bankr.D.N.M. 2008). (*See* Mot. for Stay ¶¶ 24–28.) The Court notes that the *Orbit Petroleum* test does not use the express language of § 1112(b)(2).

Nevertheless, for the purpose of addressing the Committee's arguments, the Court will utilize the *Orbit Petroleum* test. In doing so, the Court offers no opinion as to the propriety of the *Orbit Petroleum* test.

the hearing on the Motions to Dismiss to rewrite history on this topic, but the Court corrected the misstatements of the Committee's counsel. Moreover, the Committee simply *assumes* that substantive consolidation of the Debtors' cases will be granted, which—despite protestations to the contrary by the Committee's counsel at the hearing on the Motions to Dismiss—is necessary for the Committee's Plan to provide a greater recovery to general unsecured creditors of all of the Debtors, as the Committee has alleged. (*See* Mot. for Stay ¶ 25.)

■ The Committee next argues that the second element of § 1112(b)(2)—" 'the "cause" for dismissal or conversion is something other than a continuing loss or diminution of the estate coupled with a lack of reasonable likelihood of rehabilitation' " (*id.* ¶ 24, quoting *Orbit Petroleum,* 395 B.R. at 148)—has been satisfied because "the Foundations' alleged cause for dismissal is 'the successful outcome that has been achieved through the chapter 11 process....' " (*Id.* ¶ 26, quoting TMHF Mot. to Dismiss ¶ 17; WRHF Mot. to Dismiss ¶ 17.) In the Committee Objection and at the hearing on the Motions to Dismiss, the Committee equated satisfaction of this second element with its non-applicability. This second element simply cannot be satisfied or met under the present circumstances. There is nothing that can be rehabilitated or cured. So, even though the first part of this element is met—*i.e.,* the cause for dismissal is something other than a continuing loss or diminution of the estate—the cause is not and *cannot* be "coupled" with a lack of reasonable likelihood of rehabilitation. The Committee's interpretation that this element is satisfied turns the statute on its head. The Committee has provided absolutely no case law

to support its position that—notwithstanding there is no way to satisfy this element—this element has, indeed, been "satisfied" because it is not applicable.

The Committee proffers that the third element—" 'there is reasonable justification or excuse for a debtor's act or omission and the act or omission will be cured within a reasonable time' " (*id.* ¶ 24, quoting *Orbit Petroleum,* 395 B.R. at 148)—is also satisfied because there is no act or omission to cure and, thus, this element is "automatically satisfied." (*Id.* ¶ 27.) The Committee again provided absolutely no authority for its argument concerning "automatic satisfaction" of an element that cannot be otherwise satisfied in reality. At the April 12, 2011 Hearing on the Motion for Stay, counsel for the Committee conceded that § 1112(b)(2) was written for situations where a non-debtor party in interest moves for dismissal because of some act or omission taken by the debtor and, as a consequence, does not fit the instant circumstances. (*See* Hr'g. Tr. at 10:59:15 ("Granted Section 1112 is typically a statute, and quite frankly the way it's geared, it's typically geared, at least the way I read it, for parties other than the debtor to move to dismiss the case.").) Despite this admission, the Committee continues to press its position that *the exception in § 1112(b)(2) to mandatory dismissal in § 1112(b)(1)* requires that the Motions to Dismiss be denied. There is no foundation or merit to this position. Contrary to being satisfied, § 1112(b)(2) sets forth an inapplicable exception to the rule requiring dismissal.

In the Motion for Stay, the Committee makes an entirely *new* argument that the potential cause for dismissal—*i.e.,* de minimis claims against the Foundations [6]—ex-

---

6. This first proposition is disingenuous because, as set forth above, neither the Dismiss-

al Opinion nor the Dismissal Order was based on a finding of "de minimis" claims.

ists only because the Foundations failed to pay their share of the Bond Obligations and the non-operating restructuring costs of their cases. (*Id.* ¶ 27.) The Committee contends that the reasonable justification for this omission is that "the contribution claims would only have arisen after the payment of the Bond Obligations less than 6 months ago and because all of the non-operating restructuring costs of these cases have not yet been fully incurred (and thus need not yet be apportioned among the Debtors)." (*Id.*) According to the Committee, this omission could be cured within a reasonable time through confirmation of the Committee's Plan or through filing of appropriate claims against the Foundations. (*Id.*)

■ This new argument by the Committee is not only nonsensical, but it is totally at odds with the arguments set forth in the Committee Objection and at the hearing on the Motions to Dismiss. In opposing the Motions to Dismiss, the Committee argued that § 1112(b)(2) was automatically satisfied because it was not applicable. Now the Committee postulates that § 1112(b)(2) is somehow satisfied because of claims that have never been filed or asserted against the Foundations. Moreover, since this argument was not raised by the Committee in opposing the Motions to Dismiss, the new argument cannot be raised on appeal nor used to support the Motion for Stay.

The Committee fails to acknowledge and/or understand that § 1112(b)(2) contains an *exception* to mandatory dismissal if the moving party establishes cause for dismissal, as set forth in § 1112(b)(1). The Committee would have the exception—even though not applicable by the Committee's own admission—swallow the rule in favor of dismissal. There is no support for the Committee's rather novel interpretation of this exception. The

Court found that the Foundations established cause for dismissal because the purpose for which they filed for bankruptcy protection had been fulfilled and such protection was no longer required. Because this cause is not based on a bad act or omission of the Foundations, but rather by a change of circumstances, there is and can be no "reasonable justification" for such act or omission and there is and can be no "cure" within a reasonable period of time. These two required elements of § 1112(b)(2) simply cannot be satisfied, no matter how the Committee attempts to twist the statute.

### 3. *Unusual Circumstances.*

Regardless of whether "cause" existed to dismiss the Foundations' cases, the Committee proffers that the Motions to Dismiss should have been denied because "there are 'unusual circumstances' such that dismissal of the Foundations' cases is not in the best interests of creditors, including certain of the Debtors as creditors of the Foundations' estates." (Mot. for Stay ¶ 29.) The alleged unusual circumstances warranting denial of the Motions to Dismiss are: (i) the Foundations have more than $12 million in unrestricted cash; (ii) it is "within the power" of the Foundations to give this money to Trumbull Hospital and to WRCS (Trumbull Hospital and WRCS collectively, the "Hospitals"); (iii) in turn, the Hospitals have the ability to control the Foundations; and (iv) the Hospitals have a fiduciary duty to exercise their ability to control the Foundations to cause the Foundations to give the unrestricted cash to the Hospitals. (*Id.*)

Despite the Committee's express representation that substantive consolidation was not relevant and was not properly before this Court in determining the Motions to Dismiss, the Committee's real argument rests *entirely* on substantive con-

solidation. According to the Committee, the "unusual circumstances" are that it will prevail in obtaining substantive consolidation between (i) WRHF and WRCS, and (ii) TMHF and Trumbull Hospital. Without substantive consolidation, the alleged unusual circumstances cannot exist. Unlike the potential claims by the PBGC and/or the non-Foundation Obligated Debtors, the creditors of the Hospitals have no direct claim to the Foundations' assets, and, consequently, have no claims that can be preserved against the Foundations' assets after dismissal. No creditors of the other Debtors—including the Hospitals—have claims against either TMHF and/or WRHF. The Foundations are separate entities with separate bankruptcy cases. If the Committee's argument is given any weight, the Foundations would never have filed their bankruptcy cases because—*pre-petition*—the Hospitals would have been required, in the exercise of their fiduciary duties, to have taken all of the unrestricted funds of the Foundations to pay the Hospitals' creditors. If

the Hospitals presently have a fiduciary duty to require the Foundations to give the Hospitals the Foundations' unrestricted assets to pay the Hospitals' creditors in a plan of liquidation—as the Committee argues—they had the same fiduciary obligation prior to filing for bankruptcy protection. Notwithstanding the Committee's argument, the fact of the matter is that the Hospitals never treated the Foundations like another bank account from which they could pay bills. The Committee's contention goes against the pre-petition manner in which these Debtors conducted themselves and runs afoul of the Ohio AG's position that the unrestricted funds cannot be used for such a purpose.

The Committee's argument concerning unusual circumstances rests entirely on the alleged propriety and inevitability of substantive consolidation. Substantive consolidation not only did not occur prior to dismissal of the Foundations' bankruptcy cases, but the Court was never given an opportunity to rule on the issue.[7] The

7. The Court held a telephonic status conference on March 1, 2011, to discuss pending motions and specifically the Foundations' Motions to Dismiss. At the status conference, the Court expressed its view that the Committee Objection was based largely on substantive consolidation and that the issue of substantive consolidation would, accordingly, have to be addressed prior to ruling on the Motions to Dismiss. Counsel for the Committee stated that the Committee Objection was not based on substantive consolidation of the Debtors and expressly represented that the issue of substantive consolidation (i) was not relevant to consideration of the Motions to Dismiss, and (ii) was not properly before the Court. Committee's counsel stated that the Committee had included the issue of substantive consolidation in the Committee Objection only because the Foundations had stated in the Motions to Dismiss that the Debtors cases had not been substantively consolidated, "nor could they be." (*See* TMHF Mot. ¶ 24; WRHF Mot. ¶ 24.) Despite the Foundations' brief two-paragraph reference to substantive

consolidation in the Motions to Dismiss, the Committee devoted twenty-one paragraphs (¶¶ 53–73) and more than seven pages (pp. 19–27) of the Committee Objection to the topic of substantive consolidation, arguing that "the Debtors' argument regarding substantive consolidation is incorrect and irrelevant." (Comm. Obj. ¶ 73.)

The Committee has taken and continues to assert inconsistent positions concerning substantive consolidation. Counsel for the Committee acknowledges that the Foundations' cases have never been substantively consolidated with any of the other Debtors' cases and that no motion for substantive consolidation has ever been filed. Notwithstanding this express acknowledgment, the Committee continues to harp on the fact that, prior to the Foundations filing the Motions to Dismiss, the Committee filed the Committee's Plan and proposed disclosure statement (Doc. # 1340), which were based on the assumption that all of the Debtors, including the Foundations, would be substantively consolidated. (*See generally* Hr'g. Tr. at 10:54.)

mere possibility of substantive consolidation if the Foundations are required to stay in bankruptcy does not constitute the type of unusual circumstances required to defeat dismissal. It is beyond understanding how the Committee, which has expressly and repeatedly represented that the issue of substantive consolidation is irrelevant to consideration of the Motions to Dismiss, can use substantive consolidation as the sole basis of unusual circumstances to defeat dismissal.

For all of the reasons set forth herein, the Court does not find that the Committee has a likelihood of prevailing on the merits of its appeal of the Dismissal Order.

## B. Likelihood the Committee Will Be Irreparably Harmed.

The Committee never argues that it, as the movant, will be harmed if a stay is not imposed pending appeal; it does, however, argue that the "Debtors' Unsecured Creditors" will be harmed. (Mot. for Stay ¶¶ 36–37.) The Committee states that it is the watchdog on behalf of the larger body of creditors that it represents. (*Id.* ¶ 36.) The Committee extends this argument to harm the Debtors will allegedly suffer if a stay is not imposed. "The *Debtors*, who have claims against the Foundations, and, indirectly, their creditors, *are harmed* by the effectiveness of the [Dismissal] Order in that they are *deprived of* (at least the *potential to obtain*) the more than *$12 million in unrestricted funds held by the Foundations.*" (*Id.* ¶ 37 (emphasis add-

ed).) This argument, however, is not supported by the facts.

Significantly, in acknowledging that there is only the "potential" to obtain any rights to the Foundations' assets, the Committee recognizes that any harm to the other Debtors—and, by extension, their unsecured creditors—is entirely speculative. The creditors of the other Debtors have no direct claims against the Foundations and no right to distribution of the Foundations' assets. The alleged harm is based entirely on the *possibility* that the Foundations' cases, if not dismissed, could be substantively consolidated with the bankruptcy cases of the other Debtors.

Moreover, the Debtors have their own counsel and are not represented by the Committee. The Committee does not and cannot act as the "watchdog" for the Debtors' interests. Implicit in the Committee's representation that the other Debtors will be harmed is the assumption that the Committee, as the watchdog for the unsecured creditors, can assert and enforce contribution claims on behalf of the non-Foundation Debtors. As set forth *infra* at pages 14–15, any claims for contribution— whether based on the Bond Obligations or restructuring costs—belong solely to the Debtors. The Committee cannot assert such claims on the Debtors' behalf. None of the non-Foundation Debtors objected to the Foundations' Motions to Dismiss. The non-Foundation Debtors have not filed or otherwise asserted any claims for contribution against either of the Foundations. To the extent there may be a cause of action

The Court believed and continues to believe that, given the Committee's focus on the potential for substantive consolidation, the Committee should have teed up the issue so the Court could have ruled on the propriety and applicability of substantively consolidating the Foundations with any or all of the other Debtors prior to ruling on the Motions to Dismiss. The Committee not only failed to so do, it took the position that the issue was irrelevant to consideration of the Motions to Dismiss. Having taken the position that substantive consolidation is not relevant, the Committee's continued reference to the potential for substantive consolidation should not and cannot be a determinative factor in considering whether to stay the effect of the Motions to Dismiss.

for the alleged breach of fiduciary duty for failure to assert any claim for contribution, that cause of action belongs to and can be asserted only by a debtor-in-possession or a trustee.[8] *See Pepper v. Litton,* 308 U.S. 295, 307, 60 S.Ct. 238, 84 L.Ed. 281 (1939) ("While normally that fiduciary obligation is enforceable directly by the corporation, or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee. For that standard of fiduciary obligation is designed for the protection of the entire community of interests in the corporation—creditors as well as stockholders."); *Delgado Oil Co. v. Torres,* 785 F.2d 857, 860 (10th Cir.1986) (quoting same). As a consequence, it is misleading (or at least disingenuous) for the Committee to argue that the other Debtors will be harmed if dismissal of the Foundations' cases is not stayed.

As set forth above, the Court is troubled that, although the Committee argues that the non-Foundation Debtors have fiduciary duties to assert claims for contribution against the Foundations, the Committee withdrew its Motion for the Appointment of a Chapter 11 Trustee. If the Committee was serious about the breach of fiduciary duty allegations, the motion for appointment of a trustee would still be pending. The Committee's positions are contrary, inconsistent and confusing.

Equally troubling is the Committee's contrary, inconsistent and confusing position concerning the PBGC. The Committee has objected to the Settlement Motion and insists that the PBGC still has claims against the Foundations. If the PBGC has not actually waived and released its claims against TMHF and WRHF, the PBGC would—absent imposition of a stay—be able to pursue the Foundations to recover on its claims. Without waiver of its claims, the PBGC would be the Foundations' largest unsecured creditor in bankruptcy. As a consequence, if the TMHF and WRHF cases are treated as stand alone liquidation cases (*i.e.,* no substantive consolidation), the PBGC, as the largest unsecured creditor of TMHF and WRHF, would be entitled to distribution of nearly all of the Foundations' $12 million in unrestricted funds, having to share pro rata with only a few other unsecured creditors. This is true even if, *arguendo,* the Committee's contention about contribution claims by the other Debtors has merit. To the contrary, if the Foundations' cases were to be substantively consolidated with all of the other Debtors, the PBGC would have only one consolidated claim and the Foundations' $12 million in unrestricted funds would be part of a pool to be divided among all of the unsecured creditors of all of the Debtors, leaving the PBGC with a significantly smaller recovery. As a consequence, in stark contradiction to the Committee's representation that the creditors it represents will be harmed if a stay is not imposed, the PBGC—as an entity with a very large unsecured claim for which the Committee is the watchdog—would be harmed by imposition of the requested stay, but the PBGC would not be harmed if the stay were denied.

Any harm to the Committee or to the non-Foundation Debtors' unsecured creditors if the Motion for Stay is denied is entirely speculative. However, if the Committee's arguments have substance, the PBGC could be harmed if the stay is imposed. As a consequence, the Commit-

---

8. Although it is conceivable that the Committee could seek authorization from this Court to derivatively assert such claims, the Committee has not sought Court approval to do so.

tee has not established the likelihood that any of the creditors it represents will be harmed if the Court denies the Motion for Stay.

### C. Likelihood Others Will Be Harmed.

The Committee states that no other party will be harmed by the stay, stating that (i) the Foundations "may continue to operate in the ordinary course of their business as debtors in possession" by accepting, reviewing, denying and/or approving grant requests, and (ii) the "only conceivable impact" of the stay on the non-Foundation Debtors is the preservation of the bulk of the more than $12 million in unrestricted funds "for their benefit." (Mot. for Stay ¶¶ 39–40.)

The only way the Foundations can be assured of being able to operate in the ordinary course of business is for the Dismissal Order to be effective and no stay imposed. Clearly, TMHF and WRHF cannot operate in the ordinary course of business without restrictions if a stay is imposed. As set forth below, this Court is at a loss to understand exactly what status the Foundations would have to operate at all if a stay were imposed since they would be in limbo as neither debtors-in-possession nor entities free of bankruptcy court oversight.

### D. The Public Interest.

The Committee's last argument is that a stay is in the public interest. (Mot. for Stay ¶¶ 42–43.) The Committee states, "[T]he very fact that the Ohio AG submitted the AG Position demonstrates that there is public interest in a correct outcome of the issues encompassed by the Appeal." (Id. ¶ 43.) The Committee disingenuously states that the stay will "merely preserve the status quo." (Id.)

The Committee purports to speak for others, but in speaking for the Ohio AG, it

has done so inaccurately. The Ohio AG, which has spoken for itself, opposes imposition of a stay pending appeal based on, among other things, the public interest that the Ohio AG (not the Committee) represents. The Ohio AG filed the AG Position for the "limited purpose of addressing the public interest, or lack thereof, in granting the motion for stay." (AG Pos. at 1.) The Ohio AG states, "There is *no public interest that can be served by granting a stay on the Foundations' assets pending appeal."* (Id. (emphasis added).) To the contrary, the Ohio AG sets forth the following three public interests that would be served by *denying* the stay: (i) allowing the Foundations to fulfill their charitable purpose; (ii) maintaining the integrity of the Foundations and encouraging charitable giving; and (iii) allowing the Foundations to satisfy their own debts. (Id. at 4.) In contrast, the Ohio AG posits that "granting the stay would serve no public purpose." (Id.)

The incongruity of the Committee's position was evident at the Hearing on April 12, 2011, when counsel for the Committee responded to the Ohio AG's third basis regarding the public interest—*i.e.,* that the Foundations' creditors would be harmed if the Foundations were forced to wait to pay those creditors. Counsel for the Committee stated that, if a stay were imposed, the Committee would have no objection to the Foundations immediately paying their own creditors in full. Any such action would be contrary to the priority of payment of creditors in 11 U.S.C. § 507 and highlights the Court's concerns about what status the Foundations could possibly have if the "effect" of the Dismissal Order is stayed.

The factor for the Court to consider is whether imposition of a stay will *serve* a public purpose. Here, the Committee has failed to establish that the public interest would not be harmed, let alone that impo-

sition of a stay would serve a public purpose. The Court agrees with the Ohio AG's position that imposition of a stay would harm the public interest.

## III. EFFECT OF STAY OF DISMISSAL ORDER

■ The Committee specifically requests "a stay of the effectiveness of the [Dismissal Order] pending the Committee's appeal...." (Mot. for Stay at 2.) Nowhere in the Committee's Motion for Stay or in its presentation to the Court at the April 12, 2011 Hearing, however, did the Committee explain what such a stay would mean from a practical and a legal point of view. It is clear how a stay affects certain kinds of orders. For example, when an order authorizing a sale is stayed, the sale cannot be closed while the stay is in effect. What is not clear is the effect of a stay of an order that dismisses a bankruptcy case. Indeed, any such stay could only create confusion and chaos.

The Foundations initially argue that, because their cases have been dismissed, there is nothing left to stay. As a consequence, the Foundations argue that the Committee's Motion for Stay is moot. (Found. Obj. at 4.) This is a facially appealing argument. The Court specifically asked the Committee's counsel if he was aware of any cases similar to the facts before this Court. Counsel for the Committee stated that he was not aware of any such cases. The Court could only find cases where, after dismissal was sought and obtained by a non-debtor moving party, the *debtor*, wanting to stay under bankruptcy protection, requested a stay pending appeal. *See Bidermann v. RHI Holdings, Inc. (In re Bidermann)*, 1994 WL 376090, 1994 U.S. Dist. LEXIS 9700 (S.D.N.Y. July 18, 1994); *In re Edwards*, 140 B.R. 515 (Bank.W.D.Mo.1992). Several cases address the fact that the automat-

ic stay terminates immediately when a case is dismissed, which is the reason a stay pending appeal is necessary for a debtor to protect its assets from execution by its creditors. *See Geberegeorgis v. Gammarino (In re Geberegeorgis)*, 310 B.R. 61, 63 (6th Cir. BAP 2004) ("Upon dismissal of the case, [the creditor] was permitted to pursue his collection rights and remedies free of the automatic stay and the Debtor's confirmed Chapter 13 plan."); *Weston v. Cibula (In re Weston)*, 101 B.R. 202, 204–05 (Bankr.E.D.Cal.1989) (internal citations omitted) ("[T]his court agrees with the *Saez* court's analysis of the effect of an order of dismissal upon the automatic stay; namely, that the automatic stay is immediately terminated (11 U.S.C. § 362(c)(2)(B)) at the moment the order dismissing the case is entered on the docket.")

The paucity of case law involving a stay of a dismissal order is distressing for a great many reasons. First, it highlights the unique posture of this case. Here, the Foundations have established that they no longer require the protection of bankruptcy, yet *creditors of other Debtors* are seeking to "stay the effectiveness" of the Dismissal Order. In light of this Court's determination that the Foundations have established cause to be free from bankruptcy oversight, the actions by the Committee are akin to an involuntary bankruptcy against TMHF and WRHF. Each of the Foundations is a charitable organization—*i.e.*, a "corporation that is not a moneyed, business, or commercial corporation"—against which an involuntary case may *not* be commenced. *See* 11 U.S.C. § 303(a) (West 2010). To grant a stay pending appeal would, in essence, thwart the protection that charitable corporations have from being placed in involuntary bankruptcy or having their cases involuntarily converted to chapter 7. *See id.;* 11 U.S.C. § 1112(c) (West 2010). The

Bankruptcy Code exempts eleemosynary institutions, such as churches, schools and charitable organizations and foundations from involuntary bankruptcies, leaving decisions about the need for bankruptcy protection within the sole discretion of the institutions themselves.

A stay of the Dismissal Order pending appeal is not the same as vacating the Dismissal Order—which, of course, this Court could not do even if it was so inclined since the Committee has filed an appeal of the Dismissal Order. As a consequence, the bankruptcy cases of TMHF and WRHF would remain dismissed. What, then, would be the consequence of staying the "effectiveness" of the Dismissal Order? In the few cases where a debtor sought to stay the effect of a dismissal order, it was to keep in place the automatic stay in 11 U.S.C. § 362 so that creditors would not be able to reach the dismissed debtor's assets.

In *Bidermann v. RHI Holdings, Inc. (In re Bidermann)*, 1994 WL 376090, 1994 U.S. Dist. LEXIS 9700 (S.D.N.Y. July 18, 1994), the district court stayed a bankruptcy order that dismissed the debtor's case pending the debtor's appeal of such order. The debtor in question had assets in France, as well as assets in the United States. The principal objector to imposition of the stay was a creditor holding a judgment in excess of $12 million against the debtor. The district court was not persuaded that the creditor would be harmed by delay in executing upon the debtor's assets while a stay was in effect because (i) the creditor would be able to enforce its judgment if the bankruptcy court's dismissal order was affirmed, and (ii) the creditor could seek partial relief from stay if the debtor attempted to dispose of its assets in France. Significantly, the district court found that the debtor

had shown a substantial possibility of succeeding on appeal.

The third criterion requires consideration of whether the debtor has shown "a substantial possibility, although less than a likelihood, of success" on appeal. The exigencies of the case prevent any detailed briefing by the parties or unhurried contemplation by the Court. Counsel appeared before the Court yesterday evening and require an answer today. I am satisfied, however, that questions of sufficient substance to satisfy this criterion arise out of (1) the legal validity of the Bankruptcy Court's giving prominent consideration to its "inability to exercise comprehensive jurisdiction over the debtor's assets" as a reason for dismissal, July 1, 1994 oral opinion at Tr. 31; and (2) the court's arguable failure to consider in any detail whether a chapter 7 conversion might serve the best interest of creditors and the estate better than dismissal of the case outright.... While intimating no view on the ultimate fate of the appeal, I think that this criterion is satisfied.

*Id.* at *1–2, 1994 U.S. Dist. LEXIS 9700 at *4–5. Unlike the present case, the district court in *Bidermann* noted that conversion to chapter 7—a result that is not available here—might have been appropriate, but was apparently not considered in detail.

In *In re Edwards*, 140 B.R. 515 (Bankr. W.D.Mo.1992), the bankruptcy court considered whether to stay an order that dismissed a chapter 11 case based on bad faith filing. In that case, the court granted the stay, but conditioned the stay upon the debtor posting a significant bond.

After careful consideration, this court has determined that it would be *appropriate to stay this order pending appeal if debtor files a supersedeas bond in the amount of $75,000,* which is the same amount as the bond ordered in the state

court action. It would not be equitable to permit debtor to continue to operate in this Chapter 11 proceeding without a bond, in violation of the state court injunction, using Superior's technology and intellectual property, for an estimated two years, while the state court injunction proceeded through Missouri appellate courts and this order proceeded to the Eighth Circuit. Such a ruling would allow debtor to use the bankruptcy court as a vehicle for violating the substance and spirit of Judge Darnold's injunction concerning ownership and misappropriation of Superior's property.

*Id.* at 521 (emphasis added). The instant case is based on circumstances dramatically different from the Edwards case. In the present case, allowing the Committee to obtain a stay that effectively keeps the Foundations in bankruptcy involuntarily violates the spirit and the substance of the Bankruptcy Code.

As mentioned above, there are few cases dealing with a stay pending appeal of a dismissal order and those cases are readily distinguishable from the case at bar. Those cases primarily deal with continuation of the automatic stay, which is not at all an issue here. What, then, is the impact and practical effect of staying a dismissal order where, as here, the debtors have established cause for dismissal due to change of circumstances that permit them to pay their creditors outside of bankruptcy? If the impact is to effectively ignore the Dismissal Order and keep the bankruptcy in place, then it has the same effect as an involuntary bankruptcy against these charitable organizations. Such an impact flies in the face of the Committee's argument that, with the imposition of a stay, the Foundations can carry on their ordinary course of business. They simply would not be able to do so. In *Weston v. Cibula (In re Weston)*, 101 B.R. 202 (Bankr.E.D.Cal.1989), the bankruptcy

court insightfully noted the following in a somewhat different context:

> Furthermore, F.R.Civ.P. 62(a) (upon which B.R. 7062(a) was expressly based) does not purport to stay proceedings which do not involve the *enforcement* of a judgment (11 Wright and Miller, *Federal Practice and Procedure*, § 2901). Rather, Rule 62(a) was designed to carve an exception to the general rule that a court's judgment becomes *effective* and, consequently, enforceable when the order is entered on the docket by prohibiting creditors from enforcing certain judgments for a period of ten days following the effective date of the order. Clearly such an exception is superfluous in the context of an order dismissing a complaint as such a judgment generally eliminates a cause of action rather than rendering one enforceable.

*Id.* at 205. Similarly, there is no "effect" to stay with a dismissal order, which *eliminates* the bankruptcy case. Absent a holding that the Foundations must continue under full bankruptcy 37 protection and restrictions as if their cases have not been dismissed—which certainly harms the Foundations, the creditors of the Foundations and the public interest—there is nothing to stay.

This Court finds that, under the circumstances, a stay of the Dismissal Order is wholly inappropriate to the extent it would keep the Foundations' bankruptcy cases open and viable.

## IV. SUPERSEDEAS BOND

Finding that a stay of the Dismissal Order is not warranted, the Court need not address whether a supersedeas bond is necessary.

## V. CONCLUSION

As set forth above, the Committee has wholly failed to establish that it meets the

test for imposition of a stay pending appeal of the Dismissal Order. The Committee has not established: (i) a likelihood of the possibility that it will prevail on the merits of its appeal; (ii) the likelihood that the Committee or the creditors it represents will be irreparably harmed absent a stay; (iii) the absence of harm to others if the court grants the stay; and (iv) the public interest will be served or at least not harmed if the stay is granted. As a consequence, the Court will deny the Motion for Stay.

An appropriate order will follow.

## ORDER DENYING MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR STAY PENDING APPEAL

This cause is before the Court on Motion of the Official Committee of Unsecured Creditors for Stay Pending Appeal ("Motion for Stay") (Doc. # 1505) filed by the Official Committee of Unsecured Creditors ("Committee") on March 24, 2011. Pursuant to the Committee's request for an expedited hearing and shortened notice time (Doc. # 1507), the Court set a hearing on the Motion for Stay for April 12, 2011, at 9:30 a.m. ("Hearing") (Doc. # 1514). Responses, if any, to the Motion for Stay were due by noon on April 9, 2011. On April 8, 2011, (i) Mike DeWine, Attorney General of Ohio ("Ohio AG"), filed Position of the Attorney General of Ohio Relative to the Motion of the Official Committee of Unsecured Creditors for Stay Pending Appeal (Doc. # 1529), and (ii) Trumbull Memorial Hospital Foundation ("TMHF") and Western Reserve Health Foundation ("WRHF" and together with TMHF, the "Foundations") filed Foundations' Objection to Motion for Stay Pending Appeal (Doc. # 1530).

The Motion for Stay seeks an order from this Court staying the effectiveness of the Court's Order Granting (i) Motion of Debtor Trumbull Memorial Hospital Foundation to Dismiss its Chapter 11 Case; and (ii) Motion of Debtor Western Reserve Health Foundation to Dismiss its Chapter 11 Case ("Dismissal Order") (Doc. # 1483) entered on March 17, 2011.

The Court held the Hearing, as scheduled, at which appeared: (i) Craig E. Freeman, Esq. on behalf of the Committee; (ii) Sean D. Malloy, Esq. on behalf of the Foundations; and (iii) Patricia D. Lazich, Esq. on behalf of the Ohio AG. After hearing arguments of counsel, the Court took this matter under advisement.

For the reasons set forth in the Court's Memorandum Opinion Regarding Motion of the Official Committee of Unsecured Creditors for Stay Pending Appeal entered on this date, the Court hereby finds:

(1) It is not likely that the Committee will succeed on the merits of its appeal of the Dismissal Order;

(2) The Committee will not be irreparably harmed by denial of the Motion for Stay;

(2) *Inter alia*, the Foundations, their creditors and the public would be harmed if the Court granted the Motion for Stay; and

(4) The public interest will benefit from denial of the Motion for Stay.

As a consequence, the Court hereby denies the Motion for Stay.

**IT IS SO ORDERED.**